Entered: October 3rd, 2025
Signed: October 2nd, 2025



**MARIA ELLENA CHAVEZ-RUARK**
**U.S. BANKRUPTCY JUDGE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | |
|---|---|
| **IN RE:** | |
| **ZENZI IYANA MILLER,** | **Case Number:  23-19179-MCR** |
| Debtor. | **(Chapter 7)** |

| | |
|---|---|
| **POWDER MILL VILLAGE,** | |
| Plaintiff, | |
| v. | **Adversary Number:  24-00222-MCR** |
| **ZENZI IYANA MILLER,** | |
| Defendant. | |

| | |
|---|---|
| **POWDER MILL VILLAGE,** | |
| Plaintiff, | |
| v. | **Adversary Number:  24-00246-MCR** |
| **ZENZI IYANA MILLER,** | |
| Defendant. | |

**MEMORANDUM OPINION**

In May and July 2024, Powder Mill Village, c/o Southern Management Companies LLC ("Powder Mill Village"), filed two eviction complaints against Zenzi Iyana Miller (the "Debtor") in the District Court of Maryland for Prince George's County (the "State Court"). The Debtor removed both proceedings to the United States District Court for the District of Maryland (the "District Court"), and the District Court then referred the proceedings to this Court because they potentially relate to the Debtor's Chapter 7 bankruptcy case. The District Court's referrals resulted in the above-captioned adversary proceedings (together, the "Adversary Proceedings") between Powder Mill Village and the Debtor.

The procedural background of the Adversary Proceedings is somewhat convoluted. In short, before the Court are (i) Powder Mill Village's motions requesting that the Court abstain from exercising jurisdiction over the parties' disputes addressed in the Adversary Proceedings and remand the proceedings to the State Court; (ii) the Debtor's motion for summary judgment on a three-count counterclaim she filed against Powder Mill Village in one of the Adversary Proceedings, and (iii) Powder Mill Village's motion to dismiss the Debtor's counterclaim.

On October 11, 2024, the Court held a hearing to consider Powder Mill Village's motions to remand and/or abstain and the Debtor's objections thereto. The Court has also considered the motion for summary judgment, which the Debtor filed two days before the hearing, and the motion to dismiss, which Powder Mill Village filed two weeks after the hearing. This Court finds that a further hearing is unnecessary to address these additional motions. *See* Md. L. Bankr. R. 9013-1(b) (permitting the Court to decide motions on the papers filed and without a hearing).

For the reasons set forth below, the Court will enter summary judgment in favor of Powder Mill Village and against the Debtor on all counts of the Debtor's counterclaim, grant Powder Mill

Village's motion to dismiss the counterclaim, grant Powder Mill Village's motions to abstain from exercising jurisdiction over the eviction complaints, and direct the Clerk of the Court to immediately remand both Adversary Proceedings to the State Court.

I.    PROCEDURAL BACKGROUND

A.    The Debtor's Bankruptcy Case

On December 18, 2023, the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.[1]  Prior to the petition date, Powder Mill Village and the Debtor entered into a residential lease agreement for the property known as 11340 Evans Trail #203, Beltsville, Maryland (the "Leased Premises").  At the time of the bankruptcy filing and at all times relevant to the matters pending before the Court, the Debtor resided at the Leased Premises.

The Debtor included Powder Mill Village on the creditor matrix [Case No. 23-19179, Dkt, No. 1] that she filed with her petition.  On January 2, 2024, the Debtor filed bankruptcy schedules [Case No. 23-19179, Dkt. No. 18] in which she identified Powder Mill Village in Part 2 of Schedule D as a party "to be Notified for a Debt That You Already Listed" but did not otherwise list Powder Mill Village as having a claim against her.  More concisely, the Debtor included Powder Mill Village as a party to receive notice of the proceedings but did not schedule Powder Mill Village as a creditor having a claim against her.

On April 11, 2024, the Court entered an Order of Discharge [Case No. 23-19179, Dkt. No. 30] and closed the Debtor's bankruptcy case.  Upon entry of the discharge order, the automatic stay terminated.  11 U.S.C. § 362(c)(2)(C).  On August 28, 2024, after the first referral from the

---

[1] Unless otherwise stated, all statutory references in this Memorandum Opinion are to the Bankruptcy Code, which is codified in Title 11 of the United States Code.

District Court, the Court entered an Order Reopening Bankruptcy Case and Waiving Fee [Case No. 23-19179, Dkt. No. 39].

B.    Powder Mill Village's First Eviction Complaint

On May 29, 2024, approximately six weeks after the Debtor received her bankruptcy discharge, Powder Mill Village filed a Failure to Pay Rent – Landlord's Complaint for Repossession of Rented Property (Real Property § 8-401) (the "First Eviction Complaint") against the Debtor in the State Court, Case No. D-05-LT-24-20587-008.   The First Eviction Complaint asserts that the Debtor failed to pay rent for the months of July 2023 through May 2024 and states that the total amount of unpaid rent for those 11 months is $25,788.25.   The First Eviction Complaint does not request a money judgment against the Debtor.

On July 15, 2024, the Debtor removed the First Eviction Complaint to the District Court, Case No. 24-2039-TDC.  Seven days later, the District Court entered an order directing the Debtor to show cause why removal was proper because it appeared to the District Court that there was no federal question or diversity jurisdiction.  The Debtor filed a response alleging that Powder Mill Village terminated the lease, that the lease termination constituted a transfer, and that such transfer triggered a generation skipping transfer tax liability under the Internal Revenue Code (a federal statute).  The District Court disagreed, found that the claims asserted were purely state law claims, and entered an order dismissing the case and remanding it to the State Court for lack of subject matter jurisdiction on August 20, 2024.

Undeterred, the Debtor again removed the First Eviction Complaint to the District Court, Case No. 24-2485-DLB, on August 27, 2024.  This time, in her notice of removal, the Debtor included a three-count counterclaim (the "Counterclaim") against Powder Mill Village seeking actual and punitive damages.  Count I of the Counterclaim alleges that Powder Mill Village

attempted to collect from the Debtor a debt that was discharged in her bankruptcy case in violation of Section 524(a)(2) of the Bankruptcy Code by "sending collection letters, making phone calls, and pursuing legal action to collect the discharged debt." Counterclaim [Adv. No. 24-00246, Dkt. No. 1-1].[2] Count II of the Counterclaim asserts that Powder Mill Village, "in attempting to collect a debt discharged in bankruptcy, used false, deceptive, and misleading representations and engaged in unfair and unconscionable practices in violation of the Fair Debt Collection Practices Act." *Id.*[3] Count III of the Counterclaim asserts that Powder Mill Village failed to satisfy a tax liability under 26 U.S.C. §§ 2603(a)(1) because the generation-skipping transfer tax "is the responsibility of the transferee of the property involved in the transfer," 2611(a)(1) because a generation-skipping transfer includes any transfer subject to the tax imposed by Chapter 13 [of the Internal Revenue Code]," and 2612(b) because "a taxable distribution includes any distribution from a trust to a skip person, or any direct skip, that is subject to the tax under this chapter." *Id.*[4] On September 16, 2024, the District Court entered an order referring the case to this Court and attached the First Eviction Complaint to the referral order. This Court assigned Adv. No. 24-00246 to the removed case.

The next day, Powder Mill Village filed a Motion to Remand and/or Abstain [Adv. No. 24-00246, Dkt. No. 2] (the "<u>First Eviction Motion to Remand</u>") asking this Court to abstain from exercising jurisdiction over the First Eviction Complaint and the Counterclaim and to remand the

---

[2] As discussed in more detail below, Section 524(a)(2) provides: "A discharge in a case under this title … operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived[.]" 11 U.S.C. § 524(a)(2).

[3] The Fair Debt Collection Practices Act is codified in Sections 1692 *et seq.* of Title 15 of the United States Code and precludes debt collectors from using abusive, unfair, or deceptive practices in collecting consumer debts.

[4] The Internal Revenue Code is codified in Title 26 of the United States Code.

matter to the State Court.  On September 23, 2024, the Debtor filed an opposition to the First

Eviction Motion to Remand [Adv. No. 24-00246, Dkt. No. 7], and on October 8, 2024, Powder

Mill Village filed a reply in support of the First Eviction Motion to Remand [Adv. No. 24-00246,

Dkt. No. 12].  On October 9, 2024, the Debtor filed a Motion for Summary Judgment [Adv. No.

24-00246, Dkt. No. 13] (the "Motion for Summary Judgment") regarding the Counterclaim and a

surreply to the First Eviction Motion to Remand [Adv. No. 24-00246, Dkt. No. 14].[5]  On

October 28, 2024, Powder Mill Village filed a Motion to Dismiss Counterclaims [Adv. No. 24-

00246, Dkt. No. 18] (the "Motion to Dismiss") and an opposition to the Debtor's Motion for

Summary Judgment [Adv. No. 24-00246, Dkt. No. 19].

     C.     Powder Mill Village's Second Eviction Complaint

On July 26, 2024, Powder Mill Village filed a second Failure to Pay Rent – Landlord's

Complaint for Repossession of Rented Property (Real Property § 8-401) (the "Second Eviction

Complaint") against the Debtor in the State Court, Case No. D-05-LT-24-26993-016.  The Second

Eviction Complaint asserts that the Debtor failed to pay rent for the months of June and July 2024

and states that the total amount of unpaid rent for those two months is $4,357.50.  As with the First

Eviction Complaint, the Second Eviction Complaint does not request a money judgment against

the Debtor.  The Court refers to the First Eviction Complaint and the Second Eviction Complaint

collectively herein as the "Eviction Complaints."

On August 9, 2024, the Debtor removed the Second Eviction Complaint to the District

Court, Case No. 24-2308-DKC, alleging that Powder Mill Village "has disregarded the bankruptcy

court's discharge order and continues to attempt to collect the discharged debt," cites to the

---

[5] This Court issued a notice that the Debtor's Motion for Summary Judgment is deficient because the
Debtor did not file a certificate of service, and the Debtor did not cure the deficiency.  The Court elects to
dispose of the motion on the merits rather than striking it for procedural reasons.

removal statute, alleges federal question jurisdiction, states a federal court has authority to enforce its own orders, argues removal is necessary to avoid inconsistent outcomes, and argues that removal is in the interest of justice because it provides a forum that can more effectively address the asserted discharge violation.  Notice of Removal [Adv. No. 24-00222, Dkt. No. 1-1].  Four days later, the District Court entered an order referring the case to this Court and attached the Second Eviction Complaint to the referral order.  This Court assigned Adv. No. 24-00222 to the removed case.

On August 29, 2024, Powder Mill Village filed a Motion to Remand and/or Abstain [Adv. No. 24-00222, Dkt. No. 3] (the "Second Eviction Motion to Remand") asking this Court to abstain from exercising jurisdiction over the Second Eviction Complaint and to remand it to the State Court.  On September 11, 2024, the Debtor filed an opposition to the Second Eviction Motion to Remand [Adv. No. 24-00222, Dkt. No. 5].  On October 8, 2024, Powder Mill Village filed a reply in support of its Second Eviction Motion to Remand [Adv. No. 24-00222, Dkt. No. 11] that appears to be identical to the reply it filed in support of the First Eviction Motion to Remand.  The Court refers to the First Eviction Motion to Remand and the Second Eviction Motion to Remand collectively herein as the "Motions to Remand."

D.    The September 18, 2024 Status Conference and the Order Setting Deadlines

On September 18, 2024, the Court held a combined status conference in the Adversary Proceedings, and on September 23, 2024, the Court issued an Order Setting Deadlines [Adv. No. 24-00222, Dkt. No. 9; Adv. No. 24-00246, Dkt. No. 6] (the "Order Setting Deadlines").  The Order Setting Deadlines instructed the Debtor to file copies of the docket entries and all papers filed in the State Court by October 2, 2024, set a deadline of October 4, 2024 for the Debtor to file a

response to the Second Eviction Motion to Remand, and scheduled a hearing on the Motions to Remand for October 11, 2024.[6]

Powder Mill Village confirmed at the status conference that it is seeking to obtain possession of the rented premises from the Debtor and is not seeking to collect a debt from the Debtor. The Eviction Complaints confirm this; in both Eviction Complaints, Powder Mill Village did not check the box that states "Landlord requests a money judgment." Adv. No. 24-00222, Dkt. No. 1-1; Adv. No. 24-00246, Dkt. No. 1-1.

> E.    The October 11, 2024 Hearing

On October 11, 2024, the Court held the hearing at which it considered the Motions to Remand and the Debtor's oppositions thereto. The Debtor and counsel for Powder Mill Village were present at the hearing. Counsel for Powder Mill Village confirmed that all substantive pleadings from the State Court proceedings have been filed in the Adversary Proceedings and, once again, confirmed that Powder Mill Village is seeking possession of the leased premises but not a money judgment against the Debtor for unpaid rent.

At the hearing, the Debtor demonstrated that she does not understand the difference between *in personam* liability and *in rem* relief and informed the Court that she relied on a friend who is in law school to draft the legal arguments set forth in her pleadings. The Debtor further stated that she believes she is not required to pay rent from the date of her discharge through the end of the lease term (which ended sometime in June 2024), that she believes she is not required to pay rent after the end of the lease term (regardless of whether she remains in possession of the

---

[6] Notwithstanding the Court's mandate and the Debtor's verbal confirmation at the status conference that she understood the Court's mandate, the Debtor has never filed copies of the docket entries and all papers filed in the State Court. As stated in footnote 5, the Court elects to dispose of the pending motions on the merits rather than granting or denying relief on procedural grounds.

premises), that she still resided at the leased premises at the time of the hearing, and that she has not paid rent since the entry of her discharge. In effect, the Debtor believes that she is not obligated to pay rent from July 2023 (when she first stopped paying rent) until such time as she no longer resides at the property. It is no wonder that the Debtor has fought to remain in possession of the property and that Powder Mill Village has fought to retake possession of the property.

II.    THE PARTIES' ARGUMENTS

A.    Powder Mill Villages' First Eviction Motion to Remand

Powder Mill Village makes five arguments in support of its First Eviction Motion to Remand.

First, Powder Mill Village argues that the removal to the District Court was untimely and, therefore, the First Eviction Complaint should be remanded to the State Court. Powder Mill Village relies on 28 U.S.C. § 1446(b), which provides that a notice of removal "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b). Powder Mill states that the First Eviction Complaint was served on the Debtor on June 10, 2024 by posting; therefore, the Debtor had until July 10, 2024 to remove the First Eviction Complaint to the District Court.[7] However, the Debtor filed the Notice of Removal of the First Eviction Complaint on August 27, 2024, far outside the 30-day window. The Court will summarily address this issue. Although the untimeliness of the removal of the First Eviction Complaint is a basis to remand the First Eviction Complaint, the Court will not end its inquiry with

---

[7] It appears that the First Eviction Complaint was posted at the property on May 13, 2024, not on June 10, 2024 as asserted in the First Eviction Motion to Remand. *See* Adv. No. 24-00246, Dkt. No. 4-3 (return of service), at ¶ 11 ("Landlord provided a Notice of Intent to File a Complaint for Summary Ejectment (Failure to Pay Rent) to the tenant on 5/13/2024 by … affixed to door of the leased property."). Using this earlier date, the deadline for the Debtor to remove the proceedings would have been June 12, 2024.

this procedural defect, particularly because it still needs to address the Counterclaim. *See Nessel on behalf of People of Michigan v. Enbridge Energy, LP*, 104 F.4th 958, 971 (6th Cir. 2024), *cert. granted sub nom. Enbridge Energy, LP v. Nessel*, 145 S. Ct. 2843 (2025) (holding that there is no equitable exception to 28 U.S.C. § 1446(b)'s timing requirements when raised in a timely-filed motion to remand).  Instead, the Court will address the merits of the parties' remaining arguments.

Second, Powder Mill Village contends that federal jurisdiction does not exist and that the Counterclaim is an improper and ineffective attempt by the Debtor to create federal jurisdiction.[8] Powder Mill Village asserts that a counterclaim cannot create federal jurisdiction where jurisdiction is lacking in the complaint, relying on *The Holmes Group, Inc. v. Vornado Air Circulation Systems, Inc.*, 535 U.S. 826, 830-32 (2002) ("we decline to transform the longstanding well-pleaded-complaint rule into the 'well-pleaded-complaint-*or-counterclaim* rule' urged by respondent") and *Shakil v. Boeteng*, 2023 WL 7194765, at *2 (D. Md. Nov. 1, 2023) (citing to *The Holmes Group* to remand a wrongful detainer action and reject an argument that a counterclaim is sufficient to support removal based on federal question jurisdiction).

Third, Powder Mill Village argues that, in the event that the Court determines that federal jurisdiction does exist, abstention is mandatory under Section 1334(c)(2) of Title 28 because the claims asserted in the First Eviction Complaint arose under state law and are not "related to" the Debtor's bankruptcy case because her case has been fully administered.  Powder Mill Village says there can be no dispute that the State Court can timely adjudicate the claims asserted in the First

---

[8] As described above, the District Court initially dismissed the First Eviction Complaint for lack of subject matter jurisdiction and remanded the matter to the State Court.  In doing so, the District Court explained that "the federal question serving as the basis for jurisdiction must appear on the face of the Complaint and cannot be asserted in defenses or other filings by the Defendant.  Adv. No. 24-00246, Dkt No. 4-2 (District Court's order dated Aug. 20, 2024, citing *Okla. Tax Comm'n v. Graham*, 489 U.S. 838, 840-41 (1989)).  When the Debtor removed the First Eviction Complaint to the District Court for a second time, she cited to the Counterclaim as the basis for federal jurisdiction.

Eviction Complaint and that the only disruption in the timely adjudication of those claims by the State Court was caused by the Debtor removing the matter to the District Court. Further, the State Court has expertise in landlord/tenant matters and can address any defense raised by the Debtor, including her assertion that unpaid pre-petition rent cannot be used as a basis for an eviction judgment.

Fourth, while Powder Mill Village concedes that it may not seek a money judgment (*i.e.*, an *in personam* judgment) against the Debtor for unpaid pre-petition rent that was discharged in her bankruptcy case, it argues that it may nonetheless base its claim for an eviction judgment on pre-petition discharged rent because the discharge relieves the Debtor's personal obligation to pay the rent but does not extinguish the underlying debt or Powder Mill Village's right to retake possession of the Leased Premises. In support, Powder Mill Village relies on *In re Dabrowski*, 257 B.R. 394 (Bankr. S.D.N.Y. 2001) (holding that a landlord could proceed *in rem* against a debtor's leasehold so long as the landlord did not obtain a personal judgment for the pre-petition rent discharged in the debtor's Chapter 7 bankruptcy case) and *In re Richardson*, No. 16-13482-BFK (Bankr. E.D. Va. May 30, 2017) (same), *aff'd sub nom. Richardson v. Priderock Capital Partners, LLC*, 2017 WL 11476091 (E.D. Va. Dec. 21, 2017), *aff'd sub nom. In re Richardson*, 724 Fed. Appx. 238 (4th Cir. 2018)(unpublished).[9]

---

[9] In *Richardson*, the United States District Court for the Eastern District of Virginia affirmed the bankruptcy court's decision to deny a motion for contempt filed against a residential landlord for allegedly violating the discharge injunction. In its ruling, the bankruptcy court explained:

> [T]he landlord is entitled to be paid and could sue for possession of the property even for prepetition debt. Now, the landlord can't sue for an in personam judgment, in other words a judgment against you for money for the pre-petition debt, but if you're in default on your pre-petition rent, the landlord can sue for possession of the property because you continue to be in breach of that lease on a post-petition basis.
>
> *        *        *

Finally, Powder Mill Village contends that equitable grounds exist to remand the First Eviction Complaint under Section 1442 of Title 28 of the United States Code because the removal of the proceedings has resulted in a delay of its ability to proceed with eviction efforts and the Debtor's discharge does not prevent Powder Mill Village from exercising its *in rem* rights to the Leased Premises.

Powder Mill Village also requests an award of costs and attorneys' fees pursuant to 28 U.S.C. § 1447(c), arguing the Debtor lacked an objectively reasonable basis for seeking removal, especially given that the District Court had already concluded that federal jurisdiction did not exist and remanded the proceedings to the State Court. *See CitiMortgage, Inc. v. Davis (In re Davis)*, 609 B.R. 324, 330-31 (Bankr. N.D. Ill. 2019) ("A court may award fees under § 1447(c) where 'the removing party lacked an objectively reasonable basis for seeking removal.'"). Powder Mill Village argues that the Debtor removed the First Eviction Complaint a second time despite the District Court informing the Debtor that the federal question serving as the basis for jurisdiction must appear on the face of the complaint and may not be asserted as a defense or in other filings. Despite this explanation, the Debtor ignored the District Court's mandate and attempted to circumvent the jurisdictional obstacle by filing the Counterclaim.

---

> [P]re-petition debts are discharged and cannot be sued for or even demanded, but if you don't pay pre-petition rent, which includes the utilities, the landlord can move for a judgment for possession of the property in state Court …
>
> *      *      *
>
> [The debtor is] not at risk for a money judgment [for pre-petition amounts owed] because the amount's been discharged, but he remains at risk for an eviction for [pre-petition] amounts that aren't paid[.]

Adv. No. 24-00246, Dkt. No. 12-1 (transcript of May 30, 2017 hearing before bankruptcy court) at 66:25-67:8, 68:3-68:7, and 70:4-70:6. As argued by the Debtor, *Richardson* involved a post-petition debt, but the bankruptcy court's discussion regarding the impact of the discharge injunction on pre-petition rent obligations is directly on point.

The Debtor, who is proceeding *pro se* in the Adversary Proceedings, opposes the First Eviction Motion to Remand because she maintains that Powder Mill Village is attempting to pursue a debt that was discharged in her bankruptcy case, that Powder Mill Village's actions violate the discharge injunction set forth in Section 524(a)(2) of the Bankruptcy Code, and that the alleged discharge violation confers federal jurisdiction over the First Eviction Complaint. The Debtor argues that the discharge injunction prevents Powder Mill Village from seeking to collect any unpaid rent that accrued pre-petition because those obligations were discharged in her bankruptcy case, and she further argues that using unpaid pre-petition rent as a basis to evict her is contrary to the clear language of Section 524(a). The Debtor asserts that bankruptcy courts have exclusive jurisdiction over matters concerning the enforcement of discharge orders and that abstention is not appropriate when a matter falls squarely within the expertise of federal courts.

The Debtor also contends that an eviction predicated on pre-petition rent coerces a debtor into satisfying a discharged obligation, thereby violating the discharge injunction. The Debtor relies on *In re Cherry*, 247 B.R. 176, 182 (Bankr. E.D. Va. 2000), where the court noted that actions that amount to indirect attempts to collect discharged debts are still impermissible under Section 524. The Debtor attempts to distinguish the *Richardson* case by arguing that *Richardson* involved a landlord pursuing eviction based on a debtor's post-petition defaults whereas Powder Mill Village is basing eviction on pre-petition rent that has been discharged.

The Debtor also argues that equitable remand is not appropriate because it fails to consider the federal interest in upholding bankruptcy protections, including the discharge injunction, and she denies that Powder Mill Village has been prejudiced by the removal to the District Court. To the contrary, the Debtor argues that any alleged delay is the result of Powder Mill Village's

unlawful attempt to collect on a discharged debt in violation of the discharge injunction and any prejudice is therefore self-inflicted.

B.      The Debtor's Motion for Summary Judgment on the Counterclaim

In her Motion for Summary Judgment, the Debtor makes the same arguments as presented in the Counterclaim and the Debtor's opposition to the First Eviction Motion to Remand, *i.e.*, that Powder Mill Village received notice of her bankruptcy case and related discharge but continued to pursue collection of the Debtor's discharged rent liability.  The Debtor argues that Powder Mill Village failed to adjust its account ledger to reflect the discharged portion of the Debtor's debt.

The Debtor further argues that Powder Mill Village's continued efforts to collect the discharged debt triggered a generation skipping transfer tax under the Internal Revenue Code and asks the Court to formally recognize Powder Mill Village's failure to pay the asserted tax obligations.  The Motion for Summary Judgment requests damages in the amount of $25,000 for emotional distress, damages in the amount of $15,000 for "financial harm" for lost work time and financial planning disruptions, and legal fees and costs of $10,000.  The Debtor seeks legal fees and costs despite proceeding *pro se* in these proceedings.

In opposition, Powder Mill Village reiterates the arguments it made in support of the First Eviction Motion to Remand.

C.      Powder Mill Village's Motion to Dismiss the Debtor's Counterclaim

In its Motion to Dismiss the Debtor's Counterclaim, Powder Mill Village makes the same arguments it made in support of the First Eviction Motion to Remand.

The Debtor did not file an opposition to the Motion to Dismiss the Counterclaim.

     D.    <u>Powder Mill Village's Second Eviction Motion to Remand</u>

In support of its Second Eviction Motion to Remand, Powder Mill Village makes arguments identical to those set forth in the First Eviction Motion to Remand and adds that the doctrine of mandatory abstention applies because the claims asserted in the Second Eviction Complaint arose after the Debtor's bankruptcy case was closed.  Alternatively, Powder Mill Village asserts that permissive abstention is appropriate because the Debtor's bankruptcy case has been fully administered, state law issues predominate, the State Court is intimately familiar with landlord/tenant cases, and it appears that the Debtor is forum shopping in an attempt to delay her eviction from the Leased Premises.  Lastly, as with the First Eviction Motion to Remand, Powder Mill Village contends that the Second Eviction Complaint should be remanded to State Court because the removal has resulted in a delay of its ability to proceed with its eviction efforts.  The Second Eviction Motion to Remand does not include a request for costs and attorneys' fees pursuant to Section 1447(c) of Title 28 of the United States Code (unlike the First Eviction Motion to Remand).

The Debtor's arguments against remanding the Second Eviction Complaint are identical to the arguments presented in her opposition to the First Eviction Motion to Remand.

III.   <u>ANALYSIS</u>

     A.    <u>Summary Judgment</u>

The standard for summary judgment is well-settled.  Rule 56 of the Federal Rules of Civil Procedure, made applicable to the Adversary Proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. Proc. 56(a).

The movant must establish that there are no material facts at issue and that she is entitled to judgment as a matter of law. *McLean, Koehler, Sparks & Hammond v. Hildebrand (In re Hildebrand)*, 230 B.R. 72, 74 (Bankr. D. Md. 1999). A material fact is one that might affect the outcome of the suit under governing law. *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A disputed fact presents a genuine issue if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Spriggs*, 242 F.3d at 183 (quoting *Anderson,* 477 U.S. at 248).

The party seeking summary judgment has the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party must produce sufficient evidence to show that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must consider all evidence in a light most favorable to the nonmoving party. *Id*., 475 U.S. at 587-88.

The Court may grant summary judgment for a nonmovant and may grant a motion for summary judgment on grounds not raised by a party. Fed. R. Civ. P. 56(f)(1) and (2). Although Powder Mill Village has not filed a cross motion for summary judgment, the Court may grant summary judgment in favor of Powder Mill Village, *sua sponte*, because the Debtor's own motion put the elements of her case before the Court and the basis for the Court's decision is purely legal. *See Tidewater Fin. Co. v. Williams (In re Williams)*, 333 B.R. 68, 71 (Bankr. D. Md. 2005) ("although the Debtor has not filed a cross motion, the court may grant summary judgment in favor of Debtor, *sua sponte,* because Tidewater's own motion [for summary judgment] put the elements of its case into play, and the basis of the decision is purely legal"), *aff'd sub nom. Tidewater Fin. Co. v. Williams*, 341 B.R. 530 (D. Md. 2006), *aff'd,* 498 F.3d 249 (4th Cir. 2007).

The Motion for Summary Judgment hinges on a single legal issue – whether the Debtor has established that Powder Mill Village violated the discharge injunction set forth in Section 524. If the Court determines that Powder Mill Village violated the discharge injunction, then judgment on the Counterclaim must be entered in favor of the Debtor.  Conversely, if the Court determines that there has been no violation of the discharge injunction, then judgment on the Counterclaim must be entered in favor of Powder Mill Village.

A bankruptcy discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2).  Count I of the Debtor's Counterclaim asks this Court to find that Powder Mill Village violated the discharge injunction of Section 524(a)(2) and to award the Debtor damages for the alleged violation, including emotional distress, attorneys' fees, and costs.  The Debtor maintains that only this Court can adjudicate a violation of the discharge injunction while Powder Mill Village maintains that the Counterclaim is an attempt to manufacture federal jurisdiction.

As explained recently by the United States Bankruptcy Court for the Eastern District of Virginia, "there is a distinction to be made between asserting the discharge as an affirmative defense, over which the State court and this Court have concurrent jurisdiction, and seeking contempt sanctions for violations of the discharge injunction, over which this Court has exclusive jurisdiction."  *DLJ Mortgage Capital, Inc. v. Arnolds (In re Arnolds)*, No. 15-14215-BFK, 2023 WL 138858, at *7 (Bankr. E.D. Va. Jan. 9, 2023).  The Bankruptcy Court for the Eastern District of New York has also addressed this issue:

> [W]hile state courts have concurrent jurisdiction to enforce a discharge injunction as an affirmative defense in collection suits,

> only the bankruptcy court that issued the discharge order may offer a contempt remedy for an alleged violation of a court order and injunction. *Belton*, 961 F.3d at 616. This is "[b]ecause our Court has never identified a private right of action under [Bankruptcy Code] section 524" so debtors must pursue their remedy through contempt proceedings. *Id*.

*Golden v. Discover Bank (In re Golden)*, No. 16-40809-ESS, 2021 WL 1535784, at *10 (Bankr. E.D.N.Y. Jan. 25, 2021). Here, the Debtor is seeking damages for an alleged discharge violation. Accordingly, this Court is the proper forum to address the Counterclaim.

The law is clear that a bankruptcy discharge only discharges a debtor's personal liability while a creditor's *in rem* rights survive the discharge. In *Johnson v. Home State Bank*, 501 U.S. 78 (1991), the United States Supreme Court addressed the impact of a bankruptcy discharge and stated:

> [W]e have no trouble concluding that a mortgage interest that survives the discharge of a debtor's personal liability is a "claim" within the terms of § 101(5). Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a "right to payment" in the form of its right to the proceeds from the sale of the debtor's property. Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a "right to an equitable remedy" for the debtor's default on the underlying obligation. Either way, there can be no doubt that the surviving mortgage interest corresponds to an "enforceable obligation" of the debtor.

> The Court of Appeals thus erred in concluding that the discharge of petitioner's *personal liability* on his promissory notes constituted the complete termination of the Bank's *claim* against petitioner. Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*.

*Id.* at 84. Although *Johnson* addressed a mortgage claim, its reasoning applies equally to any creditor having an *in rem* claim against a debtor. This legal tenet was discussed in *In re Dabrowski*, 257 B.R. 294 (Bankr. S.D.N.Y. 2001), a case cited by both parties. The *Dabrowski* court stated:

> So long as no money is sought, this Court regards proceeding in rem against the Debtor's leasehold as no more inconsistent with a discharge than would be a mortgagee's proceeding against the Debtor's fee interest.  Though the Landlord cannot, consistent with the discharge, get a personal judgment against the Debtor for the Retroactive Rent, she can, consistent with the discharge, seek to evict the Debtor for its nonpayment.

*Id.* at 415.

This Court has addressed the parameters for a creditor to pursue its *in rem* rights against property without running afoul of the discharge injunction.  In *Mejia v. Partners for Payment Relief LLC (In re Mejia)*, No. 12-12090-TJC, 2018 WL 3015141 (Bankr. D. Md. June 14, 2018), this Court explained:

> Typically a creditor may exercise its *in rem* rights against property without implicating the protections of the discharge injunction.  4 Collier on Bankruptcy ¶ 524.02 (16th ed. 2018); *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).  "Notwithstanding the facial permissibility of a lawsuit or some other action taken by a creditor vis à vis a discharged debtor, a violation of § 524(a)(2) may still be found if the debtor proves the creditor acted in such a way as to coerce or harass the debtor improperly, *i.e.*, so as to obtain payment of the discharged debt."  *In re Paul*, 534 F.3d at 1308 (citation and internal quotation marks omitted); *see also Pratt v. GMAC (In re Pratt)*, 462 F.3d 14, 19 (1st Cir. 2006) ("even legitimate state-law rights exercised in a coercive manner might impinge upon the important federal interest served by the discharge injunction, which is to ensure that debtors receive a 'fresh start' and are not unfairly coerced into repaying discharged prepetition debts.").  "An action is coercive where it is 'tantamount to a threat,' ... or places the debtor 'between a rock and hard place' in which he would lose either way."  *Lumb v. Cimenian (In re Lumb)*, 401 B.R. 1, 6–7 (B.A.P. 1st Cir. 2009) (quoting *Jamo v. Katahdin Fed. Credit Union*, 283 F.3d 392, 402 (1st Cir. 2002)).

> Therefore, "[e]ven if a creditor threatens only to enforce its surviving lien, that threat will violate the discharge injunction if the evidence shows that the threat is really an effort to coerce payment of the underlying discharged debt."  4 Collier on Bankruptcy ¶ 524.02(2)(a).  In such a circumstance, "[t]he absence of any other reason for a creditor's act other than coercion is circumstantial evidence of the creditor's motives."  *Id.*

*Id.* at *3–4.

The Court finds that the Debtor has failed to establish that Powder Mill Village violated the discharge injunction.  There is not a scintilla of evidence that Powder Mill Village is attempting to do anything other than exercise its *in rem* rights as to the Leased Premises.  The Eviction Complaints confirm that Powder Mill Village is not seeking a money judgment against the Debtor, and Powder Mill Village's counsel confirmed this fact at the hearings held on September 18, 2024 and October 11, 2024.  Powder Mill Village wants to retake possession of the Leased Premises because the Debtor has defaulted on her monthly rental obligations.  It is of no import whether she defaulted pre-petition, pre-discharge, or post-discharge.  The law is clear that Powder Mill Village can pursue its *in rem* rights notwithstanding the discharge of the Debtor's personal liability for the unpaid pre-petition rent.

The Debtor's allegation that the filing of the Eviction Complaints is an attempt to coerce her into paying a discharged obligation is unsubstantiated and belied by the Eviction Complaints themselves.  Powder Mill Village is being prejudiced by the Debtor's continued occupancy of the Leased Premises because she has not been meeting her rental obligations while depriving Powder Mill Village of possession of its property.  The Debtor herself admitted that she has not paid rent since the entry of her discharge and, as evidenced by the First Eviction Complaint, did not pay rent during the 11 months preceding entry of her discharge.  The Debtor's belief that her bankruptcy discharge relieved her of the ongoing obligation to pay rent to Powder Mill Village or somehow insulated her from the consequences of her nonpayment at the continued financial risk to Powder Mill Village is, for lack of a better word, preposterous.  The Debtor's discharge applied only to her *in personam* liability for the pre-petition rent owed to Powder Mill Village; it did not give her a free place to live indefinitely.  The discharge merely terminated one aspect of Powder Mill

Village's state law and contractual enforcement rights while leaving its right to pursue collection of post-petition rent and possession of the Leased Premises in place.  *See Johnson,* 501 U.S. at 84 ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem.*").

Moreover, approximately one-half of the First Eviction Complaint and all of the Second Eviction Complaint are based on the Debtor's failure to pay post-petition rent and therefore are not subject to the discharge injunction.  The Debtor filed her bankruptcy case on December 18, 2023, and her discharge applies only to any debts existing as of that date.  *See* 11 U.S.C. § 727(b) ("a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter"); *see also River Place E. Hous. Corp. v. Rosenfeld (In re Rosenfeld)*, 23 F.3d 833, 836 (4th Cir.) *cert. denied,* 513 U.S. 874, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994) ("A discharge in bankruptcy relieves the debtor of personal liability for all pre-petition debts but those excepted under the Bankruptcy Code.").  The First Eviction Complaint is based on unpaid rent for July 2023 through May 2024, and the Second Eviction Complaint is based on unpaid rent for June and July 2024.  Assuming the Debtor's rent is due on the first day of the month, five of the months addressed in the First Eviction Complaint and both of the months addressed in the Second Eviction Complaint are after the Debtor's bankruptcy filing. To the extent the Eviction Complaints are based on the Debtor's post-petition rent obligations, the discharge injunction does not apply.

For these reasons, the Court finds that Powder Mill Village is entitled to judgment on all counts of the Counterclaim because they are all predicated on a finding that Powder Mill Village violated the discharge injunction.  Having found no such violation, the Court concludes that there

can be no violation of the Fair Debtor Collection Practices Act as alleged in Count II and no triggering of any kind of generation skipping transfer tax liability as asserted in Count III. Frankly, with respect to Count III, this Court is bewildered by the Debtor's assertion that Powder Mill Village somehow incurred a tax liability applicable to the transfer of assets or property to individuals that are more than one generation below the transferor. *See* 26 U.S.C. §§ 2601-2633 (setting forth generation skipping transfer tax law); *see also Est. of Timken v. U.S.*, 601 F.3d 431, 433 (6th Cir. 2010) (stating that the generation skipping transfer tax was "intended to ensure taxation of generation skipping transfers in a comparable manner to outright transfers from one generation to the next, and to remove the estate planning tool of escaping taxation by skipping a generation in an estate transfer"). That type of tax is wholly inapplicable to the facts here.

In sum, the Court finds that there are no disputes over any material facts and that Powder Mill Village is entitled to judgment as a matter of law on all counts of the Counterclaim. Consequently, the Court will dismiss the Counterclaim in its entirety.

B.    <u>Mandatory Abstention</u>

Having disposed of the Debtor's Counterclaim, the Court is left with Powder Mill Village's Eviction Complaints. Powder Mill Village argues that the Court is required to abstain from considering the Eviction Complaints under Section 1334(c)(2) of Title 28, which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2).

Abstention is mandatory when: (1) the proceeding is based on a state law cause of action; (2) the proceeding relates to a Title 11 case but is not a core proceeding; (3) the proceeding could not have been commenced in federal court absent jurisdiction provided by Section 1334 of Title 28; and (4) the proceeding is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction. 28 U.S.C. § 1334(c)(2); *Hoge v. Moore (In re Railworks Corp.*), 345 B.R. 529, 539-40 (Bankr. D. Md. 2006). The burden of proof with regard to both remand and abstention lies with the party advocating for remand and/or abstention. *In re Pettus Properties, Inc.*, 2012 WL 956915 at *3 (Bankr. W.D.N.C. Mar. 20 2012).

The Court finds that Powder Mill Village has met its burden of proof with respect to mandatory abstention. It is not remotely a close call. All of the *Railworks* factors apply to the Eviction Complaints. In fact, the Eviction Complaints are not even "related to" the Debtor's bankruptcy case in light of the impending dismissal of the Debtor's Counterclaim. The Eviction Complaints are entirely based on state law, are not core proceedings, could not have been filed in the District Court or this Court without the accompanying Counterclaim, and can be timely adjudicated by the State Court, which routinely presides over landlord/tenant matters. No further analysis is required.

As for Powder Mill Village's request for costs and attorneys' fees pursuant to Section 1447(c) of Title 28 of the United States Code because the Debtor "lacked an objectively reasonable basis for seeking removal," the Court denies the request. As explained above, there is a distinction between asserting the discharge as an affirmative defense, over which state courts and bankruptcy courts have concurrent jurisdiction, and seeking contempt sanctions for violations of the discharge injunction, over which bankruptcy courts have exclusive jurisdiction. *See In re Arnolds,* 2023 WL 138858, at *7 (stating "there is a distinction to be made between asserting the discharge as an

affirmative defense, over which the State court and this Court have concurrent jurisdiction, and seeking contempt sanctions for violations of the discharge injunction, over which this Court has exclusive jurisdiction").  The Debtor's Counterclaim requested damages for an alleged discharge violation.  Therefore, this Court is the proper forum for adjudication of the Counterclaim notwithstanding any lack of jurisdiction over the Eviction Complaints.

      C.    <u>Permissive Abstention</u>

While the Court finds that mandatory abstention exists, even if it did not apply, the Court finds that grounds exist to abstain from hearing the matter under Section 1334(c)(1) of Title 28 of the United States Code, which provides:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

Courts have identified numerous factors for a court to consider in determining whether to exercise discretion to abstain, including:  (1) the efficiency in the administration of the debtor's estate; (2) the extent to which state issues predominate over bankruptcy issues; (3) whether the issues involve difficult or unsettled questions of state law that would be better addressed by a state court; (4) the presence of a related proceeding commenced in state court; (5) the existence of a jurisdictional basis other than Section 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court; (9) the burden on the federal court's docket; (10) the likelihood that the commencement of the proceeding in federal court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) whether non-debtor parties

are involved in the proceeding.  *Railworks*, 345 B.R. at 540 n.6.  Courts should apply these factors on a case-by-case basis with no one factor necessarily determinative of the outcome.  *Barge v. Western Southern Life Ins. Co.,* 307 B.R. 541, 547 (S.D.W. Va. 2004).  "Although abstention is the exception rather than the rule, the decision to abstain is within the sound discretion of the court."  *Id*.

Again, after considering the *Railworks* factors, this is not a close call.  The Court administratively closed the Debtor's bankruptcy case after full administration and reopened the case only to address Powder Mill Village's Eviction Complaints and the Debtor's Counterclaim after the District Court referred them to this Court.  The issues presented in the Eviction Complaints are entirely based on state law and would be better addressed by the State Court, which routinely presides over landlord/tenant matters.  The Eviction Complaints were initially filed in the State Court, and other than the filing of the Counterclaim, there is no jurisdictional basis for this Court to preside over the Eviction Complaints because, by themselves, they do not relate to the Debtor's bankruptcy case.  The Eviction Complaints are not a "core" proceeding and there are no core bankruptcy matters to be severed therefrom.  The burden on this Court's docket is not a factor here; this Court will always hear and determine a matter appropriately brought before it.  Powder Mill Village argues that the Debtor removed the Eviction Complaints to the District Court for purposes of forum shopping and delay.  As previously stated, this Court is the proper forum to address the Counterclaim because it requested damages for the alleged violation of the discharge injunction.  Although the Debtor's assertions were ultimately rejected, the Court understands why the matters were referred to this Court.  Absent the Counterclaim, however, there is no basis for this Court to exercise jurisdiction over the Eviction Complaints.  Moreover, courts have repeatedly said that a plaintiff's choice of forum should be honored when possible, that a plaintiff is

prejudiced by the loss of its chosen forum, and that legitimate doubts as to the existence of federal jurisdiction must be resolved against removal and in favor of remand. *Davis & Dingle Dentistry v. E-Z Pay Services, Inc. (E-Z Pay Services, Inc.)*, 2006 WL 3230602 (Bankr. D.S.C. 2006). The issue of the right to a jury trial is not a factor here. Lastly, Powder Mill Village is not a debtor in bankruptcy and the Debtor's bankruptcy case was closed and only reopened to address the Adversary Proceedings. The Debtor's bankruptcy case will be closed after entry of this Memorandum and a related order. The *Railworks* factors overwhelmingly weigh in favor of permissive abstention.

      D.    <u>Remand</u>

The Court will next turn to Powder Mill Village's request to remand the Adversary Proceedings to the State Court. Section 1452 of Title 28 governs the removal of claims related to a bankruptcy case and the remand of any removed causes of action. This statute provides in pertinent part:

> (a) A party may remove any claim or cause of action in a civil action … to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

> (b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground.

28 U.S.C. § 1452. "Section 1452 itself provides the criterion for orders of remand, and it broadly states that a claim may be remanded 'on any equitable ground,' *i.e.*, as interpreted by some courts, any 'appropriate ground.'" *Martz Painting Contractors, LLC v. Kolius, et al. (In re Masterbuilt Companies, Inc.),* 458 B.R. 725, 729 (Bankr. D. Md. 2011) (quoting *Ernst & Young, LLP v. Devan (In re Merry-Go-Round Enterprises, Inc.*), 222 B.R. 254, 256 (D. Md. 1998)).

Courts consider several factors when deciding whether to remand an action under Section 1452(b), including: (1) the effect on the efficient administration of the bankruptcy estate; (2) the

extent to which issues of state law predominate; (3) the difficulty or unsettled nature of applicable state law; (4) comity; (5) the degree of relatedness or remoteness to the proceeding in the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed parties. *Merry-Go-Round Enterprises*, 222 B.R. at 257. Additional factors courts may consider include the efficient use of judicial resources, the possibility of inconsistent results, and the expertise of the court where the action originated. *Id.*

For the reasons discussed above in connection with abstention, all of these factors weigh in favor of remanding the Eviction Complaints to the State Court.[10] Remand is appropriate – both independently and in light of the Court's determination that mandatory abstention applies. There is simply no basis for this Court to exercise jurisdiction over the Eviction Complaints.

IV.   CONCLUSION

For the foregoing reasons, the Court will enter judgment in favor of Powder Mill Village and against the Debtor on all counts of the Debtor's Counterclaim, grant Powder Mill Village's

---

[10] In *Merry-Go-Round*, the District Court addressed the difference between remand and permissive abstention. The District Court held that the abstention principle – that a federal court has an obligation to adjudicate claims within its jurisdiction and may decline to do so only under exceptional circumstances – was not applicable to the bankruptcy court's decision to remand a matter back to state court. *Merry-Go-Round Enterprises*, 222 B.R. at 256. The District Court explained:

> [V]irtually the same (if not the identical) factors have emerged for judging the propriety of permissive abstention under § 1334(c)(1) as have been articulated for deciding the propriety of a remand under § 1452(b). This does not mean, however, that the doctrines of abstention and remand have merged in the bankruptcy context. Certainly, if a bankruptcy court concludes that it should exercise its discretion under § 1334(c)(1) to abstain from deciding a claim that has been removed from state court, it would be appropriate to remand the case to state court. In such an instance, a remand mirrors the decision to abstain and provides the mechanism for implementing the abstention. It does not follow, however, that every remand decision must be justifiable under abstention law. Section 1452 itself provides the criterion for orders of remand, and it broadly states that a claim may be remanded "on any equitable ground," i.e., as interpreted by some courts, any "appropriate ground."

*Id.* at 256-57 (citing *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 133 (1995)).

Motion to Dismiss, dismiss the Debtor's Counterclaim, grant Powder Mill Village's Motions to Remand, abstain from exercising jurisdiction over the Eviction Complaints pursuant to Section 1334(c)(2) of Title 28 of the United States Code, and direct the Clerk of the Court to immediately remand the Adversary Proceedings to the State Court pursuant to Section 1452 of Title 28.  An order consistent with this Memorandum Opinion will be issued contemporaneously herewith.

cc:      All Parties
          All Counsel

**END OF MEMORANDUM**